UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN BIANCHI,<br><br>Plaintiff,<br><br>v.<br><br>B&G MACHINE, INC., *d/b/a* H-E PARTS INTERNATIONAL: ENGINE SOLUTIONS,<br><br>Defendant. | Case No. C18-1049RSL<br><br>ORDER GRANTING<br>MOTION TO TRANSFER |

This matter comes before the Court on "Defendant's Motion to Transfer Venue." Dkt. # 7. The Court has reviewed the motion, the parties' memoranda, the associated filings, and the remainder of the record. For the following reasons, the motion is GRANTED.

## I.   BACKGROUND

In 2013, H-E Parts International, Inc. bought defendant B&G Machine, Inc., a company that plaintiff John Bianchi owned and operated as its president. Bianchi Decl. (Dkt. # 11) §§ 2–3. As part of the sale, the parties agreed Bianchi would stay on as president. To that end, they executed an Employment Agreement (the "Agreement") to serve as "the terms of [Bianchi's] employment with [B&G]." Agreement (Dkt. # 7-1).

The Agreement sets forth an "Employment Term" lasting three years from the date of execution, meaning the Employment Term ran from August 13, 2013, to August 13, 2016. Id. § 2. The Agreement provides various details of Bianchi's job during the Employment Term, including his title, duties, benefits, vacation, and expense reimbursement. Id. §§ 1, 4. Other

ORDER GRANTING MOTION TO TRANSFER - 1

provisions apply to Bianchi's "employment" generally (rather than the Employment Term).[1] Sections in a third category apply to both "[t]he Executive's employment and the Employment Term." Id. §§ 5, 6(a), (e), 8(j). (Bianchi is "the Executive." See Agreement at 1.)

The Agreement also includes a subsection titled "**SURVIVAL OF PROVISIONS**," id. § 8(j), which falls under the section that outlines the parties' obligations for certain restrictive covenants like confidentiality and noncompetition. That survival subsection provides: "The obligations contained in Section 8 and 9 hereof shall survive the termination or expiration of the Employment Term and the Executive's employment with the Company and shall be fully enforceable thereafter." Id. § 8(j). Section 8 lists the restrictive covenants noted above. Section 9 obligates Bianchi to cooperate in any future lawsuits against the Company.

After the parties' obligations, the Agreement includes structural provisions like remedies, governing law, and resolution of disputes. The dispute-resolution section includes a forum-selection clause that identifies the state and federal courts in the State of Delaware (hereinafter "Delaware Courts") as the fora for resolving disputes. Id. § 17. That section provides in part:

> Each of the parties agrees that any dispute between the parties shall be resolved only in the courts of the State of Delaware or the United States District Court for the District of Delaware and the appellate courts having jurisdiction of appeals in such courts. In that context, and without limiting the generality of the foregoing, each of the parties hereto irrevocably and unconditionally (a) submits in any proceeding relating to this Agreement or the Executive's employment by the Company, or for the recognition and enforcement of any judgment in respect thereof (a "Proceeding"), to the exclusive jurisdiction of the courts of the State of Delaware, the court of the United States of America for the District of Delaware, and appellate courts having jurisdiction of appeals from any of the foregoing, and agrees that all

---

[1] For example, the recitals describe the Agreement as providing "the terms of the Executive's employment with the Company." Agreement at 1. The section providing for termination upon death or disability describes salary and expenses "through the date of termination of employment." Id. §§ 6(a)(i), (ii). The confidentiality and noncompetition provisions also describe the period of Bianchi's "employment." Id. §§ 8(a), (b). The Agreement provides Bianchi must return company-provided laptops, cell phones, or other property upon his "termination of employment with the Company." Id. § 8(f). Other provisions likewise refer only to "employment." See id. § 6(d), (e).

ORDER GRANTING MOTION TO TRANSFER - 2

claims in respect of any such Proceeding shall be heard and determined in such Delaware State court or, to the extent permitted by law, in such federal court . . . .

Id.

Bianchi served as president of the newly acquired B&G Machine until July 2015. Bianchi Decl. ¶ 4. At that time, he stepped down and assumed the role of Technical Advisor, and his son, David Bianchi, took over as president. Id. In early 2016, plaintiff met with H-E management about his role after the Employment Term ended in August 2016. Id. ¶ 5. Bianchi asserts they agreed on a part-time role with a flexible schedule and an annual salary of $100,000. Id. That ended in February 2018, when B&G terminated Bianchi's employment. Id. ¶ 6.

Plaintiff filed a complaint in King County Superior Court, alleging that his termination amounted to age discrimination in violation of state and federal law. Dkt. # 1-1 at 3–4. Several weeks later, defendant removed the matter to this Court. Dkt. # 1. Defendant then filed a motion to transfer venue, invoking the Agreement's forum-selection clause. Dkt. # 7. Plaintiff opposes the motion, arguing that the forum-selection clause does not apply because the Employment Term ended in August 2016. Dkt. # 10.

## II.   DISCUSSION

Rather than engaging the substantive standards for transfer of venue, the parties' chief dispute is whether the forum-selection clause applies. That threshold question depends on whether this dispute falls within the clause's scope and whether the forum-selection clause applies even though the Employment Term ended in 2016.

**A.   Forum Selection Clause**

The scope of the forum-selection clause, including whether it is limited to the Employment Term, is a matter of interpreting and construing the Agreement's terms. Under Delaware law,[2] "[w]hen interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement." GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012). "In upholding the intentions of

---

[2] The Agreement provides it should be interpreted under Delaware law. Agreement § 16.

ORDER GRANTING MOTION TO TRANSFER - 3

the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." E.I. du Pont de Nemours & Co. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del. 1985). "The Court will interpret clear and unambiguous terms according to their ordinary meaning." GMG Capital Invs., LLC, 36 A.3d at 780.

The Agreement provides that "[e]ach of the parties agrees that any dispute between the parties shall be resolved only in [a Delaware Court]." Agreement § 17. More specifically, it provides that each party submits to the exclusive jurisdiction of the Delaware Courts "in any proceeding relating to this Agreement or [Bianchi's] employment by the Company . . . and [each party] agrees that all claims in respect of any such [p]roceeding shall be heard and determined in [Delaware Courts]." Id. Notably, the forum-selection clause not only applies to disputes arising from the Agreement, but also extends to "any proceeding relating to . . . [Bianchi's] employment by the Company." Id.

The term "employment by the Company" is significant, because the Agreement uses "employment" and "Employment Term" to mean different things. The parties explicitly limited some sections to the duration of the Employment Term. See, e.g., id. § 1(a) ("*During the Employment Term* . . ., the Executive shall serve as the President of the Company.") (emphasis added); see also id. § 1(b) (describing duties and responsibilities "[d]uring the Employment Term"); id. § 4 (providing for benefits, vacations, and expense reimbursement "during the Employment Term"). In other places, the Agreement refers only to Bianchi's "employment." See supra note 1. Provisions in a third category refer to both "[t]he Executive's employment and the Employment Term." Id. §§ 5, 6(a), (e), 8(j).

This difference in language shows that the parties intended the term "employment" to be broader than "Employment Term." That distinction sensibly contemplates the possibility that Bianchi's employment with B&G continue after his term as president expired, in which case the Agreement would still constitute "the terms of [his] employment" but the provisions limited to the Employment Term would no longer apply. Put differently, the Agreement envisions that termination of employment and expiration of the Employment Term could come at different times. By agreeing that a Delaware Court would be the forum for any proceeding "relating to . . .

ORDER GRANTING MOTION TO TRANSFER - 4

the Executive's employment by the Company," id. § 17, the Agreement unambiguously reveals the parties intent that the forum-selection clause apply beyond the Employment Term.

That the forum-selection clause is not in the survival section does not compel a different conclusion. As an initial observation, the discussion above suggests the Agreement's terms that were not limited to the Employment Term survived that period's expiration as long as Bianchi was employed at B&G.[3] Indeed, the Agreement covers "the terms of [Bianchi's] *employment*," id. at 1 (emphasis added), not just the Employment Term. Even were that not the case, the survival provision would not foreclose applying the forum-selection clause to a later dispute as long as that dispute falls within the scope of the forum-selection clause's language. Though "contractual obligations will cease, in the ordinary course, upon termination of [an] . . . agreement," Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 207 (1991), performance obligations differ from "structural provisions relating to remedies and dispute resolution," id., which may survive a contract's termination or expiration, see id.; see also Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc., 641 F. App'x 849, 858 (11th Cir. 2016) (explaining "structural provisions (such as [a] choice of law provision) remain unaffected by the termination of the agreement"). The forum-selection clause—like the sections that cover notice and remedies—is that kind of structural provision, whereas the survival provision describes obligations. That the survival provision covers "obligations contained in Section 8 and 9" does not impliedly limit the forum-selection clause from applying to a later dispute otherwise within the clause's scope.

Bianchi's reliance on Weiss v. Lonnquist, 153 Wn.App. 502 (2009), is misplaced. In Weiss, the relevant contract had both terminated and expired, and the question was whether its terms were presumed to govern the plaintiff's post-termination employment. Id. at 512. This case is resolved by properly construing the Agreement, and the Court need not invoke principles

---

[3] Although certain other obligations in the Agreement apply to Bianchi's "employment"—for example, the termination-without-cause severance provision, Agreement § 6(c)—the Court makes no finding on Bianchi's entitlement to any remedies provided for in the Agreement.

ORDER GRANTING MOTION TO TRANSFER - 5

of implied contract. In addition, the Agreement's forum-selection clause is broader in scope than the arbitration clause at issue in Weiss.

For these reasons, the Court concludes that the forum-selection clause is not limited to the Employment Term. Because this dispute "relat[es] to . . . [Bianchi's] employment by the Company," it falls within the forum-selection clause's scope.

**B.    Transfer of Venue**

The federal change-of-venue statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 62 (2013).

The Court has concluded the parties agreed to a valid forum-selection clause that applies to this case and that specifies the Delaware Courts as the agreed-upon fora for resolving these claims. The United States District Court for the District of Delaware is accordingly a proper transferee court for purposes of § 1404(a) and defendant's motion. Plaintiff has not asserted other grounds opposing the forum-selection clause's enforceability or otherwise opposing transfer. The Court concludes that transfer to the District of Delaware is appropriate.

### III.    CONCLUSION

For the foregoing reasons, defendant's motion to transfer venue, Dkt. # 7, is GRANTED. The Clerk of Court is directed to transfer the file in this matter to the United States District Court for the District of Delaware.

DATED this 11th day of September, 2018.

*[signature: MRT S Lasnik]*
Robert S. Lasnik
United States District Judge