# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN BIANCHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1492-CFC-SRF |
| | ) | |
| B & G MACHINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this age discrimination action is a motion filed by defendant B & G Machine, Inc. ("B&G") for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] (D.I. 44) For the following reasons, the court recommends DENYING defendant's motion for judgment on the pleadings.

### II. BACKGROUND

#### a. Procedural History

On June 29, 2018, plaintiff John Bianchi ("Mr. Bianchi") originally filed this action against B&G in the Superior Court of Washington, asserting claims arising from his termination from his employment. (D.I. 1, Ex. 1) On July 18, 2018, the case was removed to the United States District Court for the Western District of Washington by defendant B&G pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (D.I. 1) On July 25, 2018, B&G filed a motion to transfer venue. (D.I. 7) On September 11, 2018, the Western District of Washington granted B&G's motion to transfer venue and directed that the case be transferred to this court. (D.I. 15)

---

[1] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 45), plaintiff's answering brief (D.I. 46), and defendant's reply brief (D.I. 48).

On February 22, 2019, plaintiff filed an amended complaint (the "First Amended Complaint"). (D.I. 33) On March 8, 2019, B&G filed a motion for judgment on the pleadings. (D.I. 35) On March 29, 2019, plaintiff filed a second amended complaint (the "Second Amended Complaint"). (D.I. 41) On April 12, 2019, B&G filed the present motion for judgment on the pleadings. (D.I. 44)

**b. Factual Background[2]**

This case arises out of defendant's alleged age discrimination in terminating Mr. Bianchi's employment. Counts 1 and 2 of the Second Amended Complaint allege age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and in violation of Washington's law against age discrimination ("WLAD"), Wash. Rev. Code §§ 49.60.010-.510. (D.I. 41 at ¶¶ 30-36)

Plaintiff was born on August 27, 1944 and was 73 years old when he was terminated from his employment on February 28, 2018. (*Id.* at ¶¶ 5-6) Plaintiff was a "part-owner" of B&G, a Washington based business, until he sold the company to H-E Parts in August 2013. (*Id.* at ¶ 8) Thereafter, the parties agreed that plaintiff would remain an employee for an additional three years.[3] (*Id.*)

On May 20, 2015, B&G's Chief Operating Officer, Mike Coffey ("Mr. Coffey"), wrote an email to plaintiff, stating that B&G wanted to ensure that the long-term leadership had "some runway behind them when we sell the company." (*Id.* at ¶ 9; D.I. 46, Ex. A) Mr. Coffey also

---

[2] The facts in this section are based upon allegations in the Second Amended Complaint, which the court accepts as true for the purposes of the present motion for judgment on the pleadings. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[3] The Second Amended Complaint notes that "[i]t was contemplated in an agreement around this time that Plaintiff would remain a Defendant-employee for an additional three years." (D.I. 41 at ¶ 8) B&G does not dispute that they entered into this agreement. (D.I. 45 at 4)

2

stated that it was important to identify both the founder and the "new blood" to potential buyers. (D.I. 41 at ¶ 11) On July 29, 2015, B&G changed plaintiff's job responsibilities from that of an executive to those of a technical advisor. (*Id.* at ¶ 13)

In August 2016, the three-year term expired for plaintiff's employment, but he continued to work for B&G. (*Id.* at ¶ 14) On April 19, 2017, plaintiff indicated that he wished to continue working for B&G, and inquired whether his age was a factor in his continued employment. (*Id.* at ¶ 15) Mr. Coffey responded that "all companies need new blood," but that plaintiff would be employed as long as he was healthy and performing. (*Id.* at ¶¶ 15-16) On April 20, 2017, Mr. Coffey emailed plaintiff and referenced an agreement for plaintiff to work another two years for B&G. (*Id.* at ¶ 17)

In September 2017, Mr. Coffey informed one of plaintiff's sons that plaintiff would be terminated because of an incident involving a former B&G employee. (*Id.* at ¶ 19) On January 31, 2018, Mr. Coffey informed plaintiff that his last day would be February 28, 2018. (*Id.* at ¶ 20) When plaintiff responded that he wished to remain employed, Mr. Coffey stated that his "history and reputation cast a large shadow and the business needs for Eric, Bill and the Seattle team to gain their footing." (*Id.*) Plaintiff's two sons, who are approximately twenty to thirty years younger than plaintiff, remained employed with B&G.[4] (*Id.* at ¶ 21) Around the time of plaintiff's termination, B&G hired Eric Lentz ("Mr. Lentz"), who was approximately 39 years old. (*Id.* at ¶ 22) Mr. Lentz "replaced Plaintiff at [B&G] for all intents and purposes." (*Id.*) On February 2, 2018, Mr. Coffey informed plaintiff's sons that they were a critical part of B&G's

---

[4] Plaintiff contends in his answering brief that plaintiff's sons were also subject to a three-year term of employment, but were not terminated at the same time. (D.I. 46 at 2) However, the Second Amended Complaint does not include factual allegations regarding his sons' employment agreements. (D.I. 41)

future and that it was time to move on from plaintiff's termination. (*Id.* at ¶ 23) On March 1, 2018, Mr. Coffey informed several B&G employees that plaintiff's termination was by agreement. (*Id.* at ¶ 24) On March 28, 2018, Mr. Coffey informed plaintiff that he was terminated due to the results of a diligence assessment that indicated that former owners should be transitioned out to allow new management an opportunity for success. (*Id.* at ¶ 25) Plaintiff alleges that he was healthy, performed well, and was an asset to B&G at all relevant times. (*Id.* at ¶ 27) However, Mr. Coffey consistently made representations that there needed to be "new blood" and "new ideas" in management and a potential for new growth. (*Id.* at ¶ 29)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 995, 178 L.Ed.2d 825 (Jan. 18, 2011).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Under this standard, the court must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences in favor of the non-moving party. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). This

determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

As a preliminary matter, plaintiff argues that defendant's motion should be treated as a motion for summary judgment because defendant relies upon documents appended to its Answer, instead of arguing whether the Second Amended Complaint itself contains sufficient factual allegations under Rule 12. (D.I. 46 at 3, 9) The exhibits attached to defendant's Answer that are referenced in its opening brief are three threads of email correspondence between Mr. Coffey and plaintiff. (D.I. 43, Ex. A; Ex. B; Ex. C; D.I. 45 at 7 n.1) These emails are incorporated by reference in the Second Amended Complaint and, therefore, the motion is not converted to a motion for summary judgment.[5] (D.I. 41 at ¶¶ 9, 17, 20) *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008) (on a Rule 12 motion, the court must consider allegations in the complaint, taken as true, and any documents referenced in the complaint); *In re Fedders N. Am., Inc.*, 422 B.R. 5, 10 (Bank. D. Del. 2010) (considering documents incorporated by reference in the complaint does not convert the motion to a motion for summary judgment).

Under the ADEA, a plaintiff establishes a prima facie case of disparate treatment by demonstrating that he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008)

---

[5] To the extent that plaintiff also attaches the same email exhibits to his answering brief, the court considers plaintiff's exhibits. (D.I. 46, Ex. A; Ex. D; Ex. F; D.I. 43, Ex. A; Ex. B; Ex. C)

5

(quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "[T]he elements of a prima facie case of age discrimination under [Washington] state law are substantially the same as those established by federal decisions under the ADEA." *Douchette v. Bethel School Dist. No. 403*, 117 Wash. 2d 805, 814 (Wash. 1991) (under Washington state law, the elements to establish a prima facie case of age discrimination are as follows: the employee "(1) was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger person."). Therefore, if plaintiff's Second Amended Complaint is sufficient under the ADEA, it is sufficient under the WLAD. *See Kenny v. University of Delaware*, C.A. No. 17-1156-RGA, 2018 WL 1022576, at *4 (D. Del. Feb. 22, 2018) (conducting Rule 12(b)(6) analysis under the ADEA and state law simultaneously because of the same requirements to establish a prima facie case under both).

Defendant argues that the Second Amended Complaint fails to allege facts sufficient to establish an age discrimination claim under the ADEA or the WLAD because the factual allegations only give rise to an inference of the possibility of misconduct. (D.I. 45 at 7-10) Here, plaintiff has pleaded sufficient factual allegations to state a claim for age discrimination under both the ADEA and the WLAD. Plaintiff has alleged that he was 73 years old when he was terminated. (D.I. 41 at ¶¶ 5-6) Plaintiff alleged that he was healthy and performing his job satisfactorily before he was discharged on February 28, 2018. (*Id.* at ¶ 27) The parties dispute whether plaintiff has adequately pleaded factual allegations to support the fourth element, that plaintiff was replaced by a younger individual with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207 (internal quotation marks omitted). (D.I. 41 at ¶¶ 19-26) Plaintiff cites *Sheppard*, wherein the plaintiff was terminated while "younger comparators" kept their jobs, thereby giving

rise to an inference of age discrimination. (D.I. 46 at 12-13) *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-50 (9th Cir. 2012). Similarly, here, plaintiff alleges that his younger sons kept their jobs and a younger individual replaced him. (D.I. 41 at ¶¶ 21-26)

Defendant contends that plaintiff's position could not have been filled by Mr. Lentz because plaintiff's position was unique to him. (D.I. 45 at 10) The Second Amended Complaint does not allege that plaintiff's position was created specifically for him, as defendant contends. (D.I. 41 at ¶¶ 13, 22) Furthermore, the Second Amended Complaint avers that although Mr. Lentz's title was not the same as plaintiff's, he "replaced Plaintiff at [B&G] for all intents and purposes." (*Id.* at ¶ 22) At this stage in the proceedings, the court accepts as true all well-pleaded factual allegations contained within the Second Amended Complaint and draws reasonable inferences in favor of plaintiff. *See Umland*, 542 F.3d at 64. Defendant's argument that Mr. Lentz did not actually replace plaintiff is a factual argument inappropriate for the court to decide at this stage in the proceedings. Similarly, defendant's argument that plaintiff's allegations regarding his conversations with Mr. Coffey are inaccurate are factual arguments inappropriate for this stage in the proceedings. (D.I. 45 at 7-8)

Furthermore, defendant asserts that Mr. Coffey's alleged statements do not demonstrate age discrimination, but rather adherence to an established succession plan, wherein plaintiff would be phased out in approximately three years after he sold B&G. (*Id.* at 7-8, 10; D.I. 48 at 5) Defendant raises this argument to provide a legitimate, nondiscriminatory reason for plaintiff's termination. (D.I. 45 at 9) *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (after plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions). However, defendant's arguments as to the merits of plaintiff's age discrimination claim are premature. At

7

this stage in the litigation, all the court can decide is whether the Second Amended Complaint states facially plausible claims. Whether or not such claims are factually supportable is a question for resolution at a later stage of the litigation.

Accepting the well-pleaded facts as true for the purposes of the instant motion for judgment on the pleadings, plaintiff has adequately pleaded age discrimination claims under the ADEA and WLAD against defendant. Therefore, the court recommends denying defendant's motion for judgment on the pleadings.

## V. CONCLUSION

For the foregoing reasons, the court recommends denying defendant's motion for judgment on the pleadings. (C.A. No. 18-1492, D.I. 44)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 21, 2019

Sherry R. Fallon
United States Magistrate Judge