IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN BIANCHI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1492-CFC-SRF |
| | ) |
| B & G MACHINE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

Presently before the court in this age discrimination action is a motion for summary judgment filed by Defendant B & G Machine, Inc. ("B&G").[2] (D.I. 86)[3] For the following reasons, Defendant's motion for summary judgment is GRANTED.

### II. BACKGROUND

#### a. Procedural History

On June 29, 2018, Plaintiff, John Bianchi, commenced this action against B&G in the Superior Court of Washington, asserting claims arising from the termination of his employment. (D.I. 1, Ex. 1) On July 18, 2018, the case was removed to the United States District Court for the Western District of Washington by Defendant, B&G, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (D.I. 1) On July 25, 2018, B&G filed a motion to transfer venue. (D.I. 7) On September

---

[1] The parties consented to the jurisdiction of a magistrate judge for disposition of Defendant's motion for summary judgment. (D.I. 78)
[2] Defendant is sued as "B & G Machine, Inc. *a Washington corporation doing business as* H-E Parts International, Engine Solutions." (D.I. 1; D.I. 2)
[3] The briefing for the pending motion is as follows: Defendant's opening brief (D.I. 87), Plaintiff's answering brief (D.I. 92), and Defendant's reply brief (D.I. 93).

11, 2018, the Western District of Washington granted B&G's motion to transfer venue and directed that the case be transferred to this court. (D.I. 15)

On February 22, 2019, Plaintiff filed an amended complaint. (D.I. 33) On March 8, 2019, B&G filed a motion for judgment on the pleadings that was rendered moot by Plaintiff's filing of a second amended complaint (the "SAC") on March 29, 2019. (D.I. 35; D.I. 39; D.I. 41) On April 12, 2019, B&G responded with another motion for judgment on the pleadings. (D.I. 44) The court recommended denying B&G's motion for judgment on the pleadings on December 10, 2019. (D.I. 61) No objections were taken, and the Report and Recommendation was adopted. (D.I. 62)

On January 14, 2022, B&G filed the present motion for summary judgment. (D.I. 86) Following completion of briefing, oral argument was held on June 1, 2022.

### b. Factual Background

This case arises out of the alleged termination of Plaintiff's employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and Washington's Law Against Age Discrimination ("WLAD"), Wash. Rev. Code §§ 49.60.010-.510.[4] (D.I. 41 at ¶¶ 30-36)

Plaintiff was 73 years old when he was terminated from his employment on February 28, 2018. (*Id.* at ¶¶ 5-6; D.I. 92, Ex. G) Plaintiff was a "part-owner" of B&G, a Washington based business, until he entered into a stock purchase agreement with H-E Parts International on August 13, 2013, wherein Plaintiff sold all of his shares in the company in exchange for an initial payment of $10,117,493, and additional payments as determined in the post-transaction earn-out

---

[4] Plaintiff concedes in his answering brief that he cannot prevail on his Washington State law claim because Washington does not recognize the direct evidence theory applied under federal law in proving age discrimination. *See*, discussion in Section IV, *infra*; (D.I. 92 at 1 n.1)

period. (D.I. 41 at ¶ 8; D.I. 87 at 5, Ex. A at 15:7-16:13, Ex. B at 10:9-12, 13:15-22) In addition, Plaintiff and Defendant executed a three-year employment contract wherein Plaintiff continued working for B&G as President. (D.I. 87, Ex A at 17:17-18:14) Hitachi subsequently purchased H-E Parts in December 2016. (D.I. 92, Ex. J. at 22:22-23:6)

On May 20, 2015, Defendant's Chief Operating Officer, Mike Coffey, wrote an email to Plaintiff, stating that the company wanted to ensure that the long-term leadership at B&G had "some runway behind them when we sell the company." (D.I. 41 at ¶ 9; D.I. 92, Ex. A) Coffey also stated in May 2015 that it was important to identify both the founder and the "new blood" to potential buyers. (D.I. 41 at ¶ 11; D.I. 92, Ex. B) Plaintiff asserts that he took contemporaneous notes of this conversation. (D.I. 92 at 2, Ex. B) On July 1, 2015, the role of President transitioned from Plaintiff to his son, David Bianchi, as part of Defendant's succession planning. (D.I. 41 at ¶ 13; D.I. 87, Ex. C; D.I. 92, Ex. I at 23:16-24:15) Thereafter, Defendant changed Plaintiff's job description from President to Technical Advisor to the President. (*Id.*)

In August 2016, the three-year term expired for Plaintiff's employment, but he continued to work without a contract in his position as Technical Advisor. (D.I. 41 at ¶ 14; D.I. 92, Ex. I at 85:10-23) On April 19, 2017, Plaintiff indicated that he wished to continue working and inquired whether his age was a factor in his continued employment. (D.I. 41 at ¶ 15; D.I. 92, Ex. C) Coffey responded that "all companies need new blood," but that Plaintiff would be employed as long as he was healthy and performing. (D.I. 41 at ¶¶ 15-16; D.I. 92, Ex. C) On April 20, 2017, Coffey emailed Plaintiff and referenced a proposed two-year contract extension on Plaintiff's employment with the Defendant. (D.I. 41 at ¶ 17; D.I. 92, Ex. D)

In September 2017, Coffey informed David Bianchi that he intended to terminate Plaintiff because of an incident involving a former co-employee. (D.I. 41 at ¶ 19; D.I. 92, Ex. E)

3

However, it was not until January 31, 2018, when Coffey informed Plaintiff that he was terminated effective February 28, 2018. (D.I. 41 at ¶ 20; D.I. 92, Ex. G) When Plaintiff responded that he wished to remain employed, Coffey stated that his "history and reputation cast a large shadow and the business needs for Eric, Bill and the Seattle team to gain their footing." (D.I. 41 at ¶ 20; D.I. 92, Ex. F)[5] Plaintiff's two sons, David and Johnny Bianchi, who are approximately twenty to thirty years younger than Plaintiff, remained employed with Defendant. (D.I. 41 at ¶ 21; D.I. 92, Ex. H)

Around the time of Plaintiff's termination, Defendant hired Eric Lentz, who was approximately 39 years old. (D.I. 41 at ¶ 22; D.I. 92, Ex. I at 35:21-36:2) Plaintiff alleges in the SAC that Lentz "replaced Plaintiff at Defendant for all intents and purposes." (D.I. 41 at ¶ 22) However, Plaintiff testified in his deposition that Lentz did not replace him. (D.I. 87, Ex. A at 35:3-36:6)[6] On February 2, 2018, Coffey informed Plaintiff's sons that they were a critical part of Defendant's future and that it was time to move on from Plaintiff's termination. (D.I. 41 at ¶ 23; D.I. 87, Ex. I) On March 1, 2018, Plaintiff alleges that Coffey informed several Defendant employees that Plaintiff's termination was by agreement. (D.I. 41 at ¶ 24; D.I. 87, Ex. I) On March 28, 2018, Coffey informed Plaintiff that he had been terminated due to the results of a diligence assessment that indicated that former owners should be transitioned out to allow new

---

[5] H-E Parts had acquired various companies which merged into a large organization leading to elimination of the President positions within the acquired companies and replacement with General Manager positions with one overarching role termed the "President of all North America." (D.I. 87, Ex. A at 25:5-26:3, Ex. F at 29:16-31:16) The President's role was assigned to Bill Brown. (*Id.*, Ex. A at 25:20-26:3)

[6] The Plaintiff's testimony is as follows:
    Q. "And do you believe that Eric Lentz was hired and he replaced David."
    A. "Yes, sir."
    Q. "You don't believe that Eric Lentz replaced you, do you?"
    A. "No. Eric didn't have any experience in engines or machining, and you really need to have that experience in order to run a company like that." (D.I. 87, Ex. A at 35:13-20)

management an opportunity for success. (D.I. 41 at ¶ 25; D.I. 92, Ex. H) Plaintiff alleges that he was healthy, performed well, and was an asset to Defendant at all relevant times. (D.I. 41 at ¶ 27; D.I. 92, Ex. I at 27:11-13) However, Plaintiff alleges that Coffey consistently made representations that there needed to be "new blood" and "new ideas" in management and a potential for new growth. (D.I. 41 at ¶ 29; D.I. 92, Ex. A-C)

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish

the absence . . . of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

The Plaintiff's opposition to Defendant's motion turns on whether there is direct evidence upon which the trier of fact could reasonably find that Plaintiff was terminated from employment on the basis of his age. (D.I. 92) The court does not apply the *McDonnell Douglas* burden-shifting analysis when a plaintiff sets forth a disparate treatment claim based on direct evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (holding that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"). Rather, the court applies the test set forth in *Price Waterhouse*[7] that "once direct evidence of age discrimination is presented the 'burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered...[his] age.'" *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004) (quoting *Fakete v. Aetna*, 308 F.3d 335, 338 (3d. Cir. 2002)); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 240-242 (1989). Direct evidence of age discrimination is "evidence sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on [the plaintiff's age] in reaching their decision." *Fakete*, 308 F.3d at 338. Plaintiff "must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire" him. *Glanzman*, 391 F.3d at 512.

---

[7] Congress overruled this test as applied in the Civil Rights Act of 1991, however, that Act does not apply to ADEA and "we continue to apply the *Price Waterhouse* test in order to resolve ADEA cases." *Glanzman*, 391 F.3d at 512 n.3.

6

Plaintiff advocates the direct evidence theory because he concedes that he cannot prevail under the *McDonnell Douglas* burden-shifting theory,[8] which first requires the Plaintiff to establish a *prima facie* case of discrimination under the ADEA. *See McDonnell Douglas Corp.*, 411 U.S. at 802.[9] To establish a *prima facie* case of age discrimination, Plaintiff must demonstrate that: "(1) the plaintiff was a member of the protected age class; (2) he suffered an adverse employment decision; (3) he was qualified to hold the position; and (4) he was replaced by a significantly younger employee." *Id.*; *see Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Plaintiff cannot satisfy the fourth prong, as he testified in his deposition that he was not replaced by Lentz and to his knowledge had not been replaced by anyone. (D.I. 87, Ex. A at 35:3-36:6)

Plaintiff argues that there is a material issue of fact as to the Defendant's motivation for his termination based upon "direct, uncontested ageist statements." (D.I. 92 at 8) Plaintiff points to the Defendant's statements he contends are "direct" evidence despite the lack of any case authority treating such statements as direct evidence. These statements include: (1) Coffey's May 20, 2015 statement, "Our motivations haven't changed. We want to make certain long term leadership at B&G…has some runway behind them when we sell the company…" (*Id.* at 7; Ex. A); (2) Coffey's May 2015 statement that it was important to say to potential buyers, "Here is the founder over here. Now, here is the new blood, new ideas, potential for growth" (*Id.* at 7, Ex. B;

---

[8] Plaintiff acknowledged at oral argument that he could not prevail on the burden-shifting theory under *McDonnell Douglas*. (6/1/2022 Tr. at 19:22-20:3)

[9] If the Plaintiff meets his *prima facie* burden, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *see Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 240 (3d Cir. 2011). If the employer satisfies its burden, "the burden of production shifts back to [Plaintiff] to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.*

D.I. 87, Ex. I at ¶ 3); and (3) Coffey's April 19, 2017 statement that "all companies need new blood" in response to Plaintiff questioning whether his age was a factor in keeping his job. (D.I. 92 at 8, Ex. C, Ex. J at 35:22-25; D.I. 87, Ex. I at ¶ 3) Defendant argues that such statements do not on their face relate to age. (D.I. 87 at 7-8, D.I. 93 at 2-3) Defendant argues that these statements are instead "stray, ambiguous, general remarks" which cannot defeat summary judgment. (D.I. 93 at 2-3, quoting *MacDonald v. Swedish Health Servs.*, 1996 WL 366604, at *2 (9th Cir. July 1, 1996)).

Plaintiff also lists a variety of rationales supplied by Defendant for Plaintiff's termination, all of which have nothing to do with age discrimination, for example: it needed a former owner removed; it conducted a diligence assessment of management; it was eliminating Plaintiff's position; it was restructuring management; and Plaintiff's termination was by agreement. (D.I. 92 at 7) Plaintiff argues Defendant's reasons for his termination are evidence of a plan of several years in the making to end Plaintiff's employment with Defendant. (*Id.* at 3-4, 7-8) However, Plaintiff fails to demonstrate how these justifications support a claim of age discrimination. *See Fakete*, 308 F.3d at 339 (evidence must "fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision"). On their face, the listed reasons comport with the business restructuring goals of the Defendant.

Moreover, "comments that do not relate to age on their face cannot by their very nature constitute direct evidence of age discrimination." *Holshue v. Fanelli Window Pros., Inc.*, 2006 WL 680878, at *3 (M.D. Pa. March 16, 2006) (quoting *Sosky v. Int'l Mill Serv., Inc.*, 1996 WL 32139, at *4 (E.D. Pa. Jan. 25, 1996)). Coffey's statement indicating his desire for new management to gain "some runway" prior to selling the company does not on its face relate to age. Likewise, "[t]he phrase 'new blood' does not on its face relate to age." *Holshue*, 2006 WL

8

680878, at *3 (emphasis in original) (finding that the phrase "new blood" is "*at best* weak circumstantial evidence of age discrimination"); *see Hodczak v. Latrobe Specialty Steel Co.*, 761 F. Supp. 2d 261, 271 (W.D. Pa. 2010), aff'd, 451 F. App'x 238 (3d Cir. 2011) (noting that employer wanting "new blood" was "not necessarily the equivalent of 'young' blood"); *see also MacDonald*, 1996 WL 366604, at *2 ("A desire to revitalize the organization with 'new blood' is not by itself synonymous with age discrimination" and "[t]aken literally, these words suggest that the [employer] wanted to consider outside applicants, both young and old").

In *Hodczak*, the plaintiffs, who were under investigation for violating their employer's ethical conduct policy, argued their terminations were based on a corporate culture of age bias. *Hodczak*, 451 F. App'x at 241. The Third Circuit Court of Appeals affirmed summary judgment for plaintiffs' employer, finding that the following incidents were temporally remote and not probative of age discrimination: (1) the CEO stating "it looks like you are ready to retire. You have gray hair and are fat" after asking whether the employee was ready to retire; (2) an employee being transferred to a different position because the company wanted "new blood" in the department; (3) the CEO mentioning the need to recruit a "younger workforce" during a meeting; and (4) older supervisors sitting at one end of the table during meetings and being routinely interrupted when speaking while management welcomed the advice of younger employees. *Id.* The court ruled that "[w]hen considering whether remarks are probative of discrimination, we consider the speaker's position in the organization, the content and purpose of the statement, and the temporal connection between the statement and the challenged employment action." *Id.* The court found the statements qualified as "stray remarks...entitled to minimal weight." *Id.* Plaintiff concedes that the statements in the instant case are less inflammatory than the comments in *Hodczak*. (6/1/2022 Tr. at 20:25-22:5)

9

As in *Hodczak*, Coffey's statements in the instant case are stray remarks entitled to minimal weight. They are temporally remote from the decision to terminate Plaintiff. *See Sosky*, 1996 WL 32139, at *4 (finding that various alleged ageist comments made months prior to the plaintiff's termination were "too stray and too remote from the decision to eliminate plaintiff's position as to constitute direct evidence of age discrimination"). Coffey's "runway behind them" and "new blood" comments in May of 2015, were made nearly three years prior to Plaintiff's termination. Coffey's April 19, 2017, "new blood" comment predates Plaintiff's termination by at least ten months and was immediately followed the next day by an offer of a two-year contract extension on Plaintiff's employment with the Defendant. (D.I. 92, Ex. D) This offer is inconsistent with a plan to terminate Plaintiff based on his age.

I.  **CONCLUSION**

Based upon the foregoing reasons, there is no issue of material fact such that a reasonable jury could find that Plaintiff would not have been fired but for his age. Therefore, Defendant's motion for summary judgment is granted. (D.I. 86)

Dated: June 8, 2022

_____
Sherry R. Fallon
United States Magistrate Judge